IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| LESLIE RENEE JACKSON, <br> Plaintiff, | * <br> * <br> * <br> * |
| v. | * Civil Action No. 10-cv-00946-AW |
| CITY OF HYATTSVILLE, *et al.*, <br> Defendants. | * <br> * <br> * <br> * |

*******************************************************************************

**Memorandum Opinion**

Pending before the Court is Defendants' Motion to Partially Dismiss or, Alternatively, for Partial Summary Judgment. Doc. No. 12. The Court has reviewed the record and finds that no hearing is necessary. *See* D. MD. LOC. R. 105(6) (2010). For the reasons stated below, the motion will be granted in part and denied in part.

I. **FACTUAL & PROCEDURAL BACKGROUND**

Unless otherwise noted, the following facts are drawn from the Complaint. Around 8:30 p.m. on February 19, 2009, Defendant Officer Davis stopped Plaintiff's teenage son, Antwaun, outside of Plaintiff's apartment building and subjected him to a pat-down search. Davis did not find anything during this search. When Plaintiff learned that Davis was confronting Antwaun, she went outside to find Davis yelling at him. She identified herself as Antwaun's mother and asked what was going on. Davis ordered her back into the building, saying "Shut, [sic] the fuck up and get back in the building."

Plaintiff did not have with her the keys to unlock the door. Davis, who had keys, unlocked the door, but let it close before she could re-enter. Plaintiff put her hands out and gestured that she did not know what to do. She began praying to herself. Davis told her to "shut the fuck up" repeatedly. Antwaun told the officer not to speak to his mother that way. Plaintiff put her hand over her son's mouth and told him not to say anything. Antwaun stood up and told Davis that he was reaching into his pocket in order to retrieve his keys to let his mother back into the building. Davis cursed and told Antwaun that he "better not fucking do anything." Plaintiff began to pray to herself again.

Plaintiff heard a "pop" sound and felt a burning sensation in her left breast. She fell to the ground. Without provocation or warning, Davis had shot her in the chest with his taser gun. She remained frozen on the ground until other officers appeared and arrested her. She was detained at the police station overnight. The next morning, Commissioner McLaughlin informed her that there were six criminal charges filed against her, including second-degree assault, disorderly conduct, failure to obey a lawful order of a police officer, and resisting lawful arrest. The criminal complaint was filed on February 19, 2009 by Defendant Officer Gray. After attending a number of proceedings relating to her criminal case, the case was dismissed on August 24, 2009.

The following facts are relevant to resolving this motion, but are contained in documents filed after the Complaint. On December 14, 2009—298 days after the events of February 19, 2009—Plaintiff sent a letter to Prince George's County and the City of Hyattsville placing them "on notice of an action for unliquidated damages for injuries to [plaintiff] against the City of Hyattsville" and the individual defendants involved in this case. Doc. No. 12, Ex. 1 at 1.

This action was brought against the City of Hyattsville ("City"), Chief of Police Douglas Holland, Officer Davis, and Officer Gray. Defendants have filed a Motion to Partially Dismiss or, Alternatively, for Partial Summary Judgment, Doc. No. 12, which is now before the Court.

## II.  STANDARD OF REVIEW

*A) Motion to Dismiss*

The purpose of a motion to dismiss is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

*B) Summary Judgment*

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.  ANALYSIS

Defendants' present motion raises several issues: (1) The Complaint fails to state a claim for a violation of the Fifth or Fourteenth Amendments (or the Maryland constitutional equivalents), (2) Plaintiff's state-law claims should be dismissed for failure to comply with the 180-day notice requirement of the Local Government Tort Claims Act ("LGTCA"), (3) Plaintiff's common-law tort claims against the City should be dismissed due to governmental immunity, (4) Plaintiff's official capacity claims against the individual defendants should be

dismissed because those theories are unavailable under both Maryland state common law and 42 U.S.C. § 1983, and (5) Plaintiff has not adequately alleged a policy-or-custom section 1983 claim against the City based on *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).

For the following reasons, the Court will: (1) grant summary judgment to all Defendants on Counts I-V (state-law claims that arose on February 19, 2009), but not Count VI (malicious prosecution), due to Plaintiff's failure to substantially comply with the notice requirement of the LGTCA, (2) dismiss Count VI (malicious prosecution) as to the City, but not as to the individual defendants, due to governmental immunity,[1] (3) dismiss all official capacity claims under section 1983, and (4) dismiss section 1983 claims premised on violations of the Fourteenth and Fifth Amendments, but leave intact the claims premised on violation of the Fourth Amendment. The Court will not, however, address Defendants' argument that Plaintiff cannot make out a section 1983 *Monell* claim against the City, because Plaintiff rightly points out that it never purported to make such a claim in the Complaint.

Contrary to Plaintiff's request for some of the claims to be dismissed without prejudice, they will instead be dismissed with prejudice. It is long past the time when Plaintiff can voluntarily dismiss her claims without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(A) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal *before the opposing party serves either an answer or a motion for summary judgment*; or . . . a stipulation of dismissal signed by all parties who have appeared." (emphasis added)).

   A. *Notice under the LGTCA*

---

[1] Plaintiff's request to substitute the Hyattsville City Police Department in place of Chief of Police Douglas Holland is futile and will be denied, because any claims against the police department would be dismissed for the same reason that claims are being dismissed against the City.

The LGTCA states that actions for unliquidated damages "may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." MD. CODE ANN., CTS. & JUD. PROC. § 5-304(b)(1). Although "substantial compliance" with the notice requirement is sufficient, and "strict compliance . . . is not always required," *Moore v. Norouzi*, 807 A.2d 632, 643 (Md. 2002), even substantial compliance demands a "communication that provides the State 'requisite and timely notice of facts and circumstances giving rise to the claim.'" *Condon v. State of Md.-Univ. of Md.*, 632 A.2d 753, 760 (1993), (quoting *Conaway v. Maryland*, 600 A.2d 1133, 1138 (1992)).

Plaintiff does not dispute that the claims described in Counts I-V arose out of events that were completed on or about February 19, 2009. Plaintiff appears to concede that she did not send notice that fully complied with the LGTCA until 298 days later, on December 14, when she finally notified the City that she intended to bring an "action for unliquidated damages" against the City and several of its officers. Doc. No. 12, Ex. 1 at 1.

Plaintiff attempts to argue that she notified the City of her claims and substantially complied with the LGTCA on August 24, 2009, when her criminal lawyer in the underlying criminal case filed a discovery motion for *in camera* inspection of the police department's personnel files. The motion articulated Plaintiff's position that she "did not intend to commit an assault(s) nor did she intend to resist his arrest, or impede in any way another arrest." Doc. No. 13, Ex. B at 4. However, this motion was not sent to the City Treasurer (as required by the LGTCA), and it only indicated that Plaintiff intended to put forth those arguments as defenses in her criminal case. This is a far cry from providing the proper City officials with notice of a civil action for damages, and therefore it does not qualify as substantial compliance with the LGTCA.

However, Plaintiff rightly notes that her malicious prosecution claim did not fully come to fruition until the date that criminal charges against her were dismissed on August 24, 2009. *See Heron v. Strader*, 761 A.2d 56, 60 (Md. 2000) ("The tort of malicious prosecution includes not only the initiation of criminal proceedings against the plaintiff, but also the termination of those proceedings in the defendant's favor as a necessary element of the cause of action."). Her December 14, 2009 notice was filed only 112 days after the termination of criminal proceedings against her. Thus, Defendants are entitled to summary judgment on Counts I-V (tort claims that ripened on February 19, 2009), but not on Count VI (malicious prosecution).[2]

### B. Governmental Immunity

Defendants argue, and Plaintiff concedes, that law enforcement is a governmental function and therefore that the City enjoys governmental immunity as to the state common-law claims, including Count VI (malicious prosecution). However, governmental immunity does not extend to claims against the individual officers. Thus, Count VI will be dismissed as to the City, but not as to the individual Defendants.

### C. Official Capacity Claims

Defendants argue, and Plaintiff concedes, that official capacity claims against the individual Defendants are not appropriate under either Maryland law or section 1983. Thus, the official capacity claims will be dismissed, and only the individual capacity claims will go forward.

---

[2] Plaintiff argues in passing that because the Maryland constitutional claims contained in Count I are based in part on malicious prosecution, Count I should survive along with Count VI. However, Plaintiff provides no case law indicating that malicious prosecution is a recognized Maryland constitutional tort, and all of the case law reviewed by this Court suggests (without directly holding) that malicious prosecution claims are filed as common law actions, not constitutional actions. *See, e.g.*, *Baltimore Police Dep't. v. Cherkes*, 780 A.2d 410, 417-18 (Md. Ct. Spec. App. 2001).

*D. Constitutional Theories for Recovery under Section 1983*

The Complaint seeks to recover under section 1983 for violations of the Fourth, Fifth and Fourteenth Amendments. Defendants do not seek dismissal of Plaintiff's Fourth Amendment theory of recovery under section 1983, but do challenge Plaintiff's Fifth and Fourteenth Amendment theories. Plaintiff concedes to dismissal of her Fifth Amendment claim, but tries to salvage the Fourteenth Amendment claim by arguing, without citation to any applicable case law, "Plaintiff has alleged that the defendants have deprived her of her liberty without due process of law." Doc. No. 13 at 6. That argument amounts to little more than a quotation of the text of the Fourteenth Amendment. Defendants rightly points out that the gist of Plaintiff's claim is that the Defendants falsely arrested her and subjected her to an excessive amount of force, and that these claims are properly analyzed under the Fourth Amendment. *See Martin v. Gentile*, 849 F.2d 863, 868 (4th Cir. 1988). Thus, the portion of Plaintiff's section 1983 Counts that seek recovery under the Fifth and Fourteenth Amendments will be dismissed, but the Fourth Amendment theory stands.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Partially Dismiss or, Alternatively, for Partial Summary Judgment, Doc. No. 12, is GRANTED IN PART and DENIED IN PART. A separate Order will follow.

|  |  |
|---|---|
| December 13, 2010 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |