IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| LESLIE RENEE JACKSON, <br> Plaintiff, | * * * * * | |
| v. | * * | Civil Action No. 10-cv-00946-AW |
| CITY OF HYATTSVILLE, *et al.*, <br> Defendants. | * * * * | |

*******************************************************************************

**Memorandum Opinion**

Pending before the Court is Defendant Danielle Gray ("Gray")'s Motion for Summary Judgment. Doc. No. 52.[1] The Court has reviewed the record and finds that no hearing is necessary. *See* D. MD. LOC. R. 105(6) (2010). For the reasons stated below, Defendant's motion will be granted.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken from the Court's prior Memorandum Opinion with changes as necessary to reflect subsequent developments in the discovery record. Around 8:30 p.m. on February 19, 2009, Defendant Officer Davis observed Plaintiff's teenage son, Antwaun, standing inside the stairwell of an apartment building. Doc. No. 52 Ex. 1 at 99. Davis radioed in that he was making a suspicious person stop.[2] *Id.* Ex. 2 at 0:02-0:16; Ex. 3 at 11.

---

[1] Defendants Andrew Davis and Danielle Gray are the only remaining defendants in this case. Because genuine disputes of material fact remain as to Plaintiff's claims against Davis, Davis is not moving for summary judgment. *See* Doc. No. 52 at 1.

[2] Gray has provided the Court with a CD recording of the police radio transmission relating to the incident, which Plaintiff contends is hearsay and should be stricken. The Court agrees that the transmission is hearsay but finds it admissible pursuant to Federal Rule of Evidence 803(3) as a statement of Davis's then-existing state of mind and intent.

Davis entered the apartment complex, to which he had a key, and proceeded to subject Antwaun to a pat-down search. Davis did not find anything during the search. Davis then instructed Antwaun to go outside. When Plaintiff learned from a neighbor that Davis was confronting Antwaun, her son, she went outside and found Davis yelling at Antwaun. Plaintiff identified herself as Antwaun's mother and asked Officer Davis what her son had done. She contends that Davis ordered her back into the building, saying "Shut, [sic] the fuck up and get back in the building."

Plaintiff did not have with her the keys to unlock the apartment complex door. Davis, who had keys to the complex, unlocked the door but let it close before Plaintiff could re-enter. Plaintiff put her hands out and gestured that she did not know what to do. She began praying to herself. Davis told her to "shut the fuck up" repeatedly. Antwaun told the officer not to speak to his mother that way. Plaintiff put her hand over her son's mouth and told him not to say anything. Antwaun stood up and told Davis that he was reaching into his pocket in order to retrieve his keys to let his mother back into the building. Davis cursed and told Antwaun that he "better not fucking do anything." Plaintiff began to pray to herself again. As the situation escalated, Davis requested that the back-up units "step it up!" and a "Signal 13" was called out, indicating that Davis was an officer in distress. *Id.* Ex. 2 at 1:41-1:44, 2:15-2:20.

Plaintiff then heard a "pop" sound and felt a burning sensation in her left breast. She fell to the ground. Without provocation or warning, Davis had shot her in the chest with his Taser gun. Davis contends that Plaintiff lunged at him causing him to deploy his Taser at her, Doc. No. 53 Ex. 3 at 168; however, Plaintiff contends she was merely standing and praying when Davis, without warning, fired the Taser. Upon seeing his mother shot with a Taser, Plaintiff's son went after Officer Davis, and a physical struggle between the two ensued. *Id.* Ex. 2 at 86-87.

During this time, Plaintiff remained frozen on the ground, until a young man helped her stand up. *Id.* Ex. 1 at 78. At that point, Defendant Officer Gray arrived at the scene. Gray saw Davis, who was injured, and who said to Gray "mom goes too"—apparently indicating that Gray was to arrest Plaintiff. *Id.* Ex. 5 at 16. Plaintiff was not wearing shoes, so Gray instructed someone to get Plaintiff's shoes for her. Doc. No. 52 Ex. 7 at 80. After Plaintiff had put on a pair of slippers, Gray explained to Plaintiff that Gray was going to have to handcuff Plaintiff. *Id.* Plaintiff was then placed in the front of Gray's patrol vehicle. *See id.* at 79-80.

During the ride to the police station, Plaintiff asked Gray what was going on and "what is all this for." Doc. No. 53 Ex. 5 at 20-21. Gray said "I just got here; I don't know. I'm just doing what I'm told." *Id.* at 21.

After turning Plaintiff over to the Prince George's County Department of Corrections, Gray began to complete the paperwork relating to the arrest. Doc. No. 52 Ex. 1 at 183. Davis arrived and provided Gray with the following account of events so that Gray could complete the incident report, statement of probable cause, and statement of charges. *See id.* at 51; Ex. 6 at 24-25.

The Court infers from the statement of probable cause that Davis told Gray that Plaintiff had come running out of the building and immediately placed herself between Davis and Plaintiff's son. *Id.* Ex. 5 at 1. Davis told Gray that he had given a loud clear verbal command to Plaintiff to step back and not interfere with the investigation, but that Plaintiff had refused to obey his commands. *Id.* Davis told Gray he had attempted to maneuver around Plaintiff, but that she had matched his movements, keeping herself between her son and Davis. *Id.* Davis told Gray that he then gave another loud and clear verbal command for Plaintiff to step away and go back into the building and to stop interfering, but that Plaintiff instead became irritated and

3

started yelling loudly. *Id.* at 2. Davis told Gray that he had again commanded Plaintiff to be quiet, but that Plaintiff had refused and began loudly addressing a small crowd that had formed, attempting to incite them to interfere with the situation. *Id.* Davis said he had told Plaintiff loudly to sit down and that she was under arrest, but that Plaintiff did not comply. *Id.* Davis told Gray that Plaintiff's son then jumped up and attempted to get around his mother so that he could get at Davis. *Id.* Davis said that Plaintiff then assumed an aggressive stance and charged Davis. *Id.* Davis told Gray he had recognized that Plaintiff was about to attack him and had deployed his Taser at her as he had been trained. *Id.*

Based on the facts Davis told Gray, she completed and signed an Incident Report, Statement of Probable Cause, and Statement of Charges. *See* Doc. No. 53 Exs. 6-8. Based on the facts she had been given, Gray directed that Plaintiff be charged with disorderly conduct, failure to obey a lawful police order, and resisting/interfering with a lawful arrest. *Id.* Ex. 8. Davis told Gray to add charges for second degree assault and obstructing and hindering a lawful police investigation, which she did. *Id.* Ex. 5 at 31.

Plaintiff was detained at the police station overnight. The next morning, Commissioner McLaughlin informed her about the criminal charges filed against her. After attending a number of proceedings relating to her criminal case, the charges were nolle prosssed, and the case dismissed on August 24, 2009.

On April 16, 2010, Plaintiff brought this action against the City of Hyattsville ("City"), the City of Hyattsville Chief of Police ("Chief of Police"), Davis, and Gray, alleging causes of action under state law and 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments. On December 13, 2010, the Court dismissed City and Chief of Police and dismissed all of Plaintiff's claims except for her malicious prosecution claim under state law and

her § 1983 claim premised on Fourth Amendment violations. On January 20, 2012, Gray moved for summary judgment as to her liability on all remaining counts. Because Davis acknowledges that genuine issues of material fact remain as to the events leading up to Gray's arrival, Davis is not seeking summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.    ANALYSIS

Gray seeks summary judgment on all remaining claims against her: a common law malicious prosecution claim (Count VI) and a § 1983 claim premised on Fourth Amendment

violations for unlawful seizure, excessive force, and malicious prosecution (Count VIII). Plaintiff has since withdrawn her excessive force claim against Gray. *See* Doc. No. 53 at 14. Gray contends that the remaining claims against her fail because Gray has established probable cause for both Plaintiff's arrest and the initiation of criminal proceedings against Plaintiff.

    A.    <u>Section 1983 Claims</u>

Plaintiff states a § 1983 claim against Gray based on unlawful seizure in violation of the Fourth Amendment. Plaintiff's allegations of false arrest and malicious prosecution are both part of her unlawful seizure claim, and the Court will proceed to analyze each separately. *See Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (holding that "there is no such thing as a '§ 1983 malicious prosecution' claim" but that such a claim is viable as "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution- specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.") (citation omitted).

    1.    <u>False Arrest</u>

Plaintiff alleges that Gray unlawfully arrested Plaintiff because Gray had no probable cause to arrest her. Gray contends that she has established probable cause for her arrest and that summary judgment is thus proper on this claim.

"A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause for a warrantless arrest exists where the "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person … in the circumstances shown, [to conclude] that the suspect has committed, is

6

committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "Whether probable cause exists in a particular situation … always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct. *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (citation omitted). "Probable cause therefore could be lacking in a given case, and the arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* (citation omitted).

In determining the lawfulness of a warrantless arrest as to an assisting officer, the inquiry turns not on events that occurred before the officer's arrival of which the officer was unaware, but on whether the officer's decision to assist in the arrest was "objectively reasonable in light of the circumstances"—*i.e.*, the circumstances known to the assisting officer at the time of the arrest—"and existing law." *Carter v. Jess*, 179 F. Supp. 2d 534, 544 (D. Md. 2001). When an assisting officer arrives late to the scene, the lawfulness of his or her arrest can be predicated on information relayed by officers already at the scene. *See Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 703 (E.D. Va. 2009) (assisting officers not required to conduct an independent investigation to establish probable cause prior to making arrest where they were told by officer already at the scene that probable cause existed, as "[s]uch a requirement would be unworkable in the environments in which the police operate."); *see also Guerrero v. Deane*, 750 F. Supp. 2d 631, 652-53 (E.D. Va. 2010) (same).

Plaintiff contends that Gray's decision to arrest her was objectively unreasonable because, unlike the assisting officers in *Ware* and *Guerrero*, Gray was not told that probable cause existed to make the arrest and was told by Davis only that "mom goes too." Plaintiff contends that, from Davis's statement "mom goes too," Gray could actually have inferred that

7

Davis wanted Plaintiff arrested simply because Plaintiff was Antwaun's mother, and that no reasonable assisting officer could have found an arrest to be lawful under those circumstances.

Based on the circumstances known to Gray at the time she arrested Plaintiff, the Court finds that Gray's actions were in fact objectively reasonable. First, Gray heard Davis's initial call over the radio seeking back-up due to a suspicious person sighting. Gray presumably also heard Davis's later calls to "step it up!" in which Davis was breathing heavily and sounded frantic, as well as the officer in distress signal that was sent out. Based on information provided by Davis, which Plaintiff has not contested, a small crowd had gathered by the time of Gray's arrival. Plaintiff also does not contest that Gray would have seen Davis bruised, with contusions to his head and face and a broken nose. It would be impractical under these circumstances to establish a Miranda-like requirement on officers like Davis, obligating them, regardless of injury or the presence of danger, to recite a statement of probable cause before back-up officers like Gray would be permitted to make an arrest. Although the officers in *Ware* and *Guerrero* did make such a statement of probable cause to the assisting officers, the Court finds that Gray could reasonably infer from Davis's statement "mom goes too" that Davis had found sufficient probable cause to arrest Plaintiff.

Moreover, the Court finds unreasonable Plaintiff's contention that Gray should have inferred an ulterior motive from Davis's statement. Under the circumstances of which Gray was aware at the time of her arrival, Gray would have no particular reason to suspect that Davis wanted Plaintiff arrested in order to take revenge on Plaintiff's son. Rather, the facts suggest that Gray had no reason to believe that Davis was acting as anything other than a reasonable officer at the time. Certainly Gray had no obligation to inspect Davis's motives on the scene before assisting him.

As the Court finds that Gray committed no unlawful arrest, Plaintiff's Fourth Amendment claim premised on false or unlawful arrest fails as a matter of law.

2. <u>Malicious Prosecution</u>

In order to establish a Fourth Amendment malicious prosecution claim as part of a § 1983 action for unlawful seizure, a plaintiff must establish that she was maliciously prosecuted under Maryland law and that the prosecution deprived her of her constitutional rights. *See Asuncion v. City of Gaithersburg*, No. 95-1159, 1996 WL 1842, at *2 (4th Cir. 1996) (citation omitted). The elements of malicious prosecution are: (1) a prosecution initiated against the plaintiff by the defendant; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or with a motive other than to bring the offender to justice. *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001) (quotation omitted).

The parties do not dispute that Gray initiated the prosecution against Plaintiff or that the criminal proceeding was later entered *nolle prosequi*, meaning that it resolved in Plaintiff's favor. However, Gray argues that she had probable cause, given the facts relayed to her by Davis, to institute the proceeding against Plaintiff and that she did not act with malice or other ulterior motive in bringing the charges. Because the Court finds that Gray had probable cause to bring the charges, it declines to discuss the element of malice.

Plaintiff essentially argues that Gray had no probable cause to institute proceedings against her because Gray had no probable cause to arrest her. The Court agrees that Gray would have had insufficient probable cause to bring charges against Plaintiff based only on the facts known to Gray at the time of the arrest. Yet Plaintiff appears to be conflating the question of whether probable cause existed for her arrest with the question of whether probable cause existed

9

to bring charges, when in this case, in relation to Gray's liability, the two inquiries are distinct. In determining whether Gray had probable cause to institute criminal proceedings against Plaintiff, the Court must look at the facts and circumstances known to Gray at the time she instituted such proceedings.

There is no dispute that Gray's decision to bring certain criminal charges against Plaintiff was predicated on the detailed narrative description provided by Davis, the first-arriving officer. The Court cannot find that Gray was under any obligation to conduct an independent investigation into the events that occurred before she arrived in order to incorporate Davis's description of events into the statement of probable cause. Plaintiff has provided the Court with no reason as to why Gray would reasonably suspect that Davis was providing her with false facts, and it appears that none of Davis's statements conflict with the events observed by Gray.

The Court is aware of no rule or legal precedent whereby an assisting officer who lacks personal knowledge of certain events may not rely on the personal observations of another officer in drafting the statement of probable cause. As when a late-arriving officer assists in a warrantless arrest, Gray is entitled here to rely on the statements of other officers as well as her own observations, and need not interview Plaintiff, weigh Plaintiff's word against Davis's, or otherwise conduct her own inquiry, in drafting the statement of probable cause. Plaintiff has also provided no argument as to why Gray might have acted improperly in relying on the statement of probable cause in drafting the statement of charges. The statement avers that, *inter alia*, Plaintiff placed herself between Davis and the suspect, engaged in "loud interference" which drew a crowd, ignored repeated commands to move even after being told she was under arrest, and "charged" at Davis. These facts, upon which Gray reasonably relied, support the charges brought by Gray for obstructing and hindering a lawful police investigation, assault in the second degree,

disorderly conduct, failure to obey a lawful police order, and resisting/interfering with a lawful arrest. Accordingly, the Court finds that Plaintiff has failed to establish that Gray lacked probable cause to bring criminal charges against Plaintiff, and Plaintiff's malicious prosecution allegation fails as a matter of law.

### 3. Qualified Immunity

It follows *a fortiori* from the Court's above holdings that Gray did not violate Plaintiff's Fourth Amendment rights and is thus entitled to qualified immunity. Even if probable cause was in fact lacking as to the arrest and prosecution of Plaintiff, however, the Court finds that qualified immunity would still apply. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In light of the clearly established law on probable cause for warrantless arrests, Gray reasonably could have believed that her assisting arrest of Plaintiff was lawful. Although Davis did not explicitly tell Gray that probable cause existed to arrest Plaintiff, the surrounding circumstances of the situation—Davis's injuries, the radio transmissions, and Davis's statement "mom goes too"—would lead a reasonable officer to believe she could lawfully arrest Plaintiff. Similarly, the Court finds that Gray's conduct in bringing criminal charges against Plaintiff did not violate clearly established rights of which a reasonable person would have known. Although Gray did not personally observe all or even most of the events contained in the statement of probable cause, her conduct in relying on Davis's statements as a basis for bringing charges against Plaintiff again did not violate any clearly established rights. Accordingly, Count VIII is dismissed.

B.      Common Law Malicious Prosecution Claim

As discussed above in relation to Plaintiff's § 1983 claim for malicious prosecution, which is premised upon the same elements, the Court finds that Plaintiff is unable to establish that Gray lacked probable cause to institute criminal proceedings against Plaintiff. The existence of probable cause to bring such charges is fatal to Plaintiff's common law malicious prosecution claim. Even if probable cause was found to be lacking, however, the Court finds that Gray would be entitled to statutory immunity for her actions under § 5-507(b)(1). That statute provides that:

> An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Statutory immunity in Maryland is qualified rather than absolute and can be overcome by proof of actual malice. *See Nelson v. Kenny*, 710 A.2d 345, 348 (1998). The only fact offered by Plaintiff in support of her allegation of malice, however, is that Gray could have inferred from Davis's statement "mom goes too" that Davis wanted Plaintiff arrested solely to get revenge on Plaintiff's son. Even assuming that Davis did have such an ulterior motive, Plaintiff has established no facts upon which Gray would be able to draw such an inference, especially since Gray was unaware of what had transpired before her arrival.

Plaintiff additionally argues that in Maryland, actual malice can be inferred by a lack of probable cause. While this is generally true, *see Okwa v. Harper*, 757 A.2d 118, 133 (2000), the actual malice contemplated by § 5-507(b)(1) "has been defined as 'an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Branch v. McGreeney*, 718 A.2d 631, 641 (1998) (citing *Town of Port Deposit v. Petetit*, 688 A.2d 54, 62 (1997)). Moreover, if the malice required to preclude statutory immunity could be inferred by a lack of probable cause, it would render the statutory protection illusory. Because Plaintiff has

not established any actions by Gray even approaching malice, Gray is entitled to statutory immunity even if probable cause were rendered absent.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Gray's Motion for Summary Judgment will be granted.[3] A separate Order will follow.

|  |  |
|---|---|
| March 19, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[3] The Court notes that Counts VI and VII remain in this case as to Defendant Davis only.